579 P.2d 1107

**RANCHO DEL ORO APARTMENT COMPANY and Monterey Water Company, Appellants,**

**v.**

**STATE of Arizona, County of Pima, Department of Revenue, State Board of Property Tax Appeals, Pima County Board of Supervisors, Pima County Assessor and Pima County Treasurer, Appellees.**

**No. 2 CA–CIV 2678.**

Court of Appeals of Arizona, Division 2.

March 6, 1978.

Rehearing Denied April 12, 1978.

Review Denied May 2, 1978.

---

**138**

Stubbs & Townsdin, P.C. by Charles L. Townsdin, Jr., Tucson, for appellants.

Bruce E. Babbitt, Atty. Gen. by Barbara E. Fisher, Asst. Atty. Gen., Tucson, for appellees.

## OPINION

RICHMOND, Chief Judge.

Appellants (the taxpayer) appeal from a judgment upholding the assessed valuation of the Casa Del Oro Apartments in Tucson for the year 1975. They contend the trial court wrongfully failed to consider the testimony of their appraiser, Arthur Tanner, and that the Pima County Assessor's valuation was reached by the use of non-standard appraisal methods and techniques that employed guidelines having no relationship to the subject property.

Their first contention is based on a minute entry prior to judgment, reciting in material part that certain exhibits

". . . disclose that the appraiser-expert witness for the [taxpayer] based his evidence upon the actual 1975 income and expenses . . . .

". . . [T]he use by Mr. Tanner of the actual values of the income and expenses of the [taxpayer] for the year 1975, which included evidence of facts which came into existence after June 13, 1975, when the assessment was finally fixed, must be disregarded by the court as such evidence is inadmissible."

In a property tax appeal, the trial court is limited in determining the value for taxation to evidence in existence at the time the assessment was made (in this case January 1, 1975). *State Tax Commission v. United Verde Extension Mining Co.*, 39 Ariz. 136, 4 P.2d 395 (1931), rehearing den., 39 Ariz. 331, 6 P.2d 889 (1931). The taxpayer infers from the foregoing minute entry, however, that the court disregarded all of Tanner's evidence, even though he testified to values based on income and expenses for 1973 and 1974 as well as those for 1975. The record supports a contrary inference. Use of the 1975 figures was challenged by the court at the time of trial and, in response, the taxpayer's counsel elicited Tanner's opinion specifically excluding the 1975

income and expenses. Under the circumstances, we believe it unreasonable to assume the trial court disregarded all of Tanner's evidence because a part was based on 1975 figures. The record discloses the court during trial properly distinguished that portion of the evidence, and further, on a motion for new trial, considered and rejected the identical contention based on the taxpayer's interpretation of the minute entry which is now raised on appeal.

 We also find no merit in the taxpayer's second contention. The assessor valued the land at $68,605, which valuation is not in dispute, and the improvements, using the cost approach (reproduction cost less depreciation) at $1,049,779, for a full cash value of $1,118,384. Tanner's total valuation was $675,000 and Paul Ash, a part owner of the apartment complex, testified that the property was worth $700,000. The apartments had been completed slightly more than two years before the valuation date at a cost of $1,300,000. The assessor's valuation reflected that amount less depreciation at an annual rate of .5 percent in the amount of $150,000. In challenging use of the cost approach, the taxpayer relies heavily upon this court's opinion in *Department of Revenue v. Transamerica Title Ins. Co.*, 117 Ariz. 26, 570 P.2d 797 (App.1977), in which we stated:

> "There are three generally accepted approaches to the valuation of real property: the market data approach, the cost approach, and the income approach. It is appellants' contention that since it used one of the three recognized approaches, the cost approach, the trial court could not come to the conclusion the Pima County Assessor's valuation was excessive. We do not agree. The appraiser

attempts to create a mythical sale in accordance with the definition of market value. However, although the sale may be mythical, this does not mean that the appraiser can use pure fiction in arriving at its value. He must face the realities of the market place. If knowledgeable buyers of hotel-motel properties do not buy on the basis of reproduction costs less the depreciation, then a grievous error is committed by relying on such a method to ascertain fair market value." 117 Ariz. at 29, 570 P.2d at 800.

In *Transamerica*, there was unrefuted testimony that knowledgeable buyers of hotel-motel properties rely solely on the income approach in determining property values. We held that testimony was sufficient to rebut the statutory presumption that the assessor's valuation by use of the cost approach was correct and lawful,[1] and to support the trial court's judgment finding the assessor's valuation to be excessive and substituting value based on income.

In the instant case, there was no such testimony precluding use of the cost approach[2] in determining the market value of the taxpayer's apartments.[3] In the absence of such testimony, we are unable to say that the trial court erred in upholding the assessor's valuation of a two-year-old apartment complex by use of the cost approach.

Although Tanner did not himself appraise the property by cost approach, he disputed the assessor's depreciation rate and testified that in his opinion a variety of functional and economic obsolescence factors merited depreciation totaling 25 percent. On the other hand, appellees' appraiser, Edward Leyba, testified that in his opinion there was no physical deterioration, functional or economic obsolescence of the property as of

---

1. A.R.S. § 42–152 (B).

2. Tanner testified that in his experience of more than 20 years in the real estate business, the income approach "is *almost* solely the factor that people rely on in investing in income property," and that "*most* buyers that I have been familiar with have considered the income approach as the prime ingredient in determining whether or not it's a good investment on an income property."

3. A.R.S. § 42–227 (A) provides that for property tax purposes the valuation of all taxable property shall be determined at its market value. The term "market value" means that estimate of value which is derived annually by the use of standard appraisal methods and techniques. A.R.S. § 42–201 (4).

the valuation date justifying depreciation at more than .5 percent per annum. The question thus was one of fact for the trial court.

■ Furthermore, Leyba testified to an alternative valuation based on the income approach of $1,090,157, within approximately three percent of the assessor's valuation based on the cost approach. While the taxpayer attacks his use of a 50-year economic life, as opposed to 30 years used by Tanner, and a 45 percent expense ratio and eight percent vacancy factor, contrasted with actual experience of 56 and 13 percent, respectively, those matters go to the weight rather than the admissibility of the evidence. Leyba testified that 50 years had been determined by state guidelines as the normal economic life of apartment buildings, and that the 45 percent expense ratio represented an adjustment from the state guideline of 35 percent for similar properties. The eight percent vacancy factor had been established by a survey of comparable properties in the area for the three months immediately preceding the evaluation date. The taxpayer's argument that the survey failed to reflect a higher rate during the summer months may render the testimony suspect, but does not reduce it to "pure fiction" within the meaning of *Transamerica*, supra.

> "[I]t is not the function of the judiciary to promulgate tax assessment regulations in the form of judicial opinions. The court's function in this area of taxation is the same as in the other traditional areas of administrative law; that is to review the actions of such administrative bodies and to super-impose its opinion only in the event that the agency abused its legislatively-delegated duty." *Navajo County v. Four Corners Pipe Line Company*, 106 Ariz. 511, 522, 479 P.2d 174, 185 (1970).

The judgment that the assessor's valuation for 1975 was not excessive is affirmed.

HOWARD and HATHAWAY, JJ., concur.